Chief Judge Schroeder, may it please the Court, Howard Ullman on behalf of Appellant Campbell. The trial court committed structural error not subject to a harmless error analysis when it excluded the defendant from an in-camera hearing concerning his counsel's debilitating conflict of interest. Is that within the Certificate of Appealability? It is not, Your Honor. The Certificate of Appealability was limited by the motions panel to a Sixth Amendment issue. However, on motion, the Court may expand a Certificate of Appealability on the motion of a party, and in our view, certainly the Court can sua sponte expand the scope as well. Was there a motion? There was not, Your Honor, but the Court asked for briefing on the due process issue, and it has been fully briefed at the panel. Has that been expanded? The only Certificate of Appealability that was issued was on the Sixth Amendment issue and not the Fifth Amendment due process issue. But again, by motion of a party, it can be expanded, and there's no case law to suggest that it's jurisdictional in the sense that the Court cannot by itself consider an additional issue on appeal. Mr. Campbell was excluded from a conference during which the prosecutor advised the Court that his attorney was being prosecuted by the very same prosecutor's office as he was. Counsel, is there a Supreme Court decision that says that, assuming this is ever and assuming we get to it despite the Certificate of Appealability, that it's structural? There is no Supreme Court opinion on all fours with all the facts in this case, Your Honor. But as this Court has noted in the Van Tran case, and indeed as the Supreme Court articulated in Taylor, one does not need to have a case on all fours. What is the strongest case for its being structural? It seems like whenever we say something structural error, we get reversed, and the Supreme Court pretty much seems to have closed that box. Well, Your Honor, at the Supreme Court level, there are two cases I would point to, and then there are circuit court cases which are the same. Tell me Supreme Court, because the 28 U.S.C. 2254d says Supreme Court. Correct, Your Honor. At the Supreme Court level, first there's Fulminante, which  I think that says something like complete absence of counsel, doesn't it? Well, Fulminante cites a number of examples of what are structural errors as opposed to trial errors, but more fundamentally, it sets forth what the analysis is. And it's our contention that not only was the conclusion here reached by the State Appellate Court incorrect, but the State Appellate Court didn't even apply the proper Fulminante analysis. I think Fulminante said that structural errors were limited to a very few enumerated categories and that it held that admission of an involuntary confession was mere trial error, not structural error. Is that right? That is correct in the case. Okay. So what's the next best Supreme Court decision? The next Supreme Court decision I would point to, Your Honor, would be Rush v. Spain. And while that decision notes that presence errors are usually subject to a harmless error analysis, it also states in footnote 2 that that's the case unless the error by its very nature cannot be harmless. And so Rush v. Spain leaves open the existence of presence errors which are indeed structural. And that is, first of all, consistent with the way the Supreme Court has treated similar types of errors, and it's also consistent with the contextual analysis that's been engaged in by the circuit in lower courts. You know, with language like unless by its nature it cannot be harmless, it's hard for me to see how we could hold that a State Appellate Court decision was clearly contrary to Rush v. Spain or was an unreasonable application of it, was unreasonable interpreted in the Williams sense, where there's nothing more specific than that that the Supreme Court has said. What am I missing there? What is true, Your Honor, is that while we do need to look to the Supreme Court decisions for what the clearly established law is on collateral review, circuit decisions as well and lower Federal Court decisions can be looked at to understand the application of that law in particular instances. And so first, as a general matter, I would say that the analysis is and must be contextual. First, that's what the Rush v. Spain footnote suggests. And second, that's what this Court, in fact, has held in cases such as Hagler. It's not merely the question of whether there's a deprivation, but it's the nature and context of the deprivation. And first of all, that makes sense, Your Honor, because even the warden doesn't suggest that deprivation of presence at the entire trial would not be subject to structural error. And moreover, it can't be the rule that presence at nearly a portion of the trial turns a structural error into a trial error, because if that were the case, then a defendant could be. As I recall, tell me if I'm wrong, the defendant was present at his entire trial except for a conference between the prosecutor, the defense lawyer and the judge about whether the criminal charge against defendants retained counsel required her to withdraw. Is that right? That's correct, Your Honor. But although it was a limited absence, it was an absence from a crucial part of the trial. It was the part of the trial that determined whether Mr. Campbell was represented by constitutionally adequate counsel. He wasn't present there to defend himself and represent his own interests because of the conflict. And for that reason, Your Honor, the error infected the entire trial mechanism and contaminated the entire trial mechanism. Your Honor, did it affect it? I read that State decision, and it seemed to carefully go through things on every contention that the defendant made about how it affected it. And it said, well, she didn't pull her punches. I think, Your Honor, there's a difference between the adverse impact inquiry, which is the inquiry under Mickens v. Taylor on the Sixth Amendment claim, and the Fifth Amendment due process inquiry, which doesn't require an adverse impact or prejudice analysis. And there are a couple of reasons for that. First, the Supreme Court said in Brecht that trial errors on collateral review are to be reviewed for under a prejudice analysis, which looks to whether there's a substantial and injurious impact on the jury's deliberations. And that's a different standard than the Sixth Amendment standard, which would be applied here to the Sixth Amendment claim. And, again, under Fulminante, the question is whether one can quantitatively assess the impact of the error in light of all the evidence presented to the jury to determine whether or not it was harmless. And although it may be, Your Honor, that one can ascertain what the likely effect was on counsel's performance here, it is not possible to assess what the impact was on the jury's ultimate deliberation and verdict. And for that reason, the error rises to a structural level. And for that reason, it infects the trial process, because the question of exactly how this affected the outcome of the jury's deliberations cannot be assessed. I don't understand that. What is this that you can't assess? You cannot assess the denial of presence of Mr. Campbell at the hearing. Well, you can, A, assess the effect of it on that hearing, and B, beyond that, you can assess the effect on counsel's performance. That's assessable, right? And you've identified two respects in which counsel's performance was affected. And so you agree or disagree that it had that effect? Well, if I understand Your Honor's question correctly, in our view, there was an effect on counsel's performance in two aspects. Now, the panel below found that the other one can assess that likely effect. I mean, can't one? Well, that is what Mickens tells us that one should do. Yes. Yes. That's correct, Your Honor. But perhaps if I can give a concrete example of how this might work in practice. Let's suppose, for example, that one were to conclude that there was a 51 percent chance that counsel's performance was affected. Nevertheless, one cannot quantitatively assess, in light of the evidence presented to the jury, what the likely effect of the error was on the jury's deliberations, because I think it's a different quantum of proof, and I think there's not a logical necessarily logical connection between the one inquiry and the other. And similarly, I would argue that if one were to conclude, say, there was only a 49 percent chance, less than 50 percent chance, that counsel's performance was affected, but it's still a possibility. It still remains the case that one cannot quantitatively assess the impact of the presence error on the jury's deliberations, which is the trial error analysis mandated by Bracht on collateral review. The to get back to the discussion of what Supreme Court law and other law supports this conclusion, in addition to Fulminante and Russian, which are the Supreme Court level cases, there are, indeed, other cases that, A, recognize that the deprivation needs to be analyzed in context, and I would refer to the Court, to this Court's decision in Hagler, which, where the Court wrote that a defendant's absence from certain stages of a criminal proceeding may so undermine the integrity of the trial process that it will necessarily require automatic reversal. Yes, but although we may care, nobody else seems to care what this Court says. That's why, Judge Kornfeld, I'm emphasizing to you that what matters is what the U.S. Supreme Court has said and whether the California Court of Appeals decision is objectively unreasonable. To me, it would be helpful for you to explain why the California Court of Appeals decision is objectively unreasonable in light of Russian spitzer. Yes, Your Honor. And I guess I would also refer the Court to some analogous Supreme Court decisions. For example, in addition to a presence right that a defendant has, there's also a right to a public trial, and the Supreme Court in Waller v. Georgia held that that right attaches not just to the entire trial but to segments or portions thereof. Now, it can be – a trial can be closed or portions can be closed depending on the governmental interest. But the Supreme Court in Waller v. Georgia held that if a portion of the trial is erroneously closed, that's structural error. This is coming out of a clear blue sky. It's not been argued ever. That particular – I know you were requesting a COA on that issue also. No, Your Honor. The panel below was the one who expanded the scope of inquiry. The panel's opinion is now history. So you've got to convince us that the California Court of Appeals decision was contrary to clearly established Supreme Court precedent. That's correct, Your Honor. And the Supreme Court has indicated that some presence errors can rise to the level of structural error. And the question then becomes which presence errors are going to meet that test. And I would argue that it is appropriate to look to circuit-level law to apply that Supreme Court principle on habeas collateral review. Counsel, I would think that in terms of whether the State Court acted contrary to or made an unreasonable application of fulminante, you'd have a lot of difficulty with pages 306 and 307 of fulminante. Let me tell you what I'm thinking of. At 306, fulminante says most constitutional errors can be harmless. The court – the rule that we adopted in Chapman does not automatically require reversal of a conviction for constitutional error. Then they have this very long page of CEGs where they cite cases, and then they have parentheticals as examples of harmless errors. And one of the citations with a parenthetical is they say, Russian versus Spain, parenthetical, denial of a defendant's right to be present at trial. That seems to say in so many words that denial of a defendant's right to be present at trial is an error that can be harmless as opposed to structural error. Even if in some circumstances or in some lower Federal courts, a contrary conclusion has sometimes been reached, I don't see how a State court could be unreasonably applying Supreme Court authority if they reach that conclusion that was not contrary to that. What am I missing here? Well, part of the answer, I think, lies in the statute, which is the error is a constitutional dimension on habeas review if it's – Sure, it's a constitutional error. We're already past that. But is reversible if it's either, A, contrary to, or B, represents an unreasonable application of clearly established Federal laws determined by the United States Supreme Court. And so, again, going back to the Taylor case, there the Court said that an unreasonable application of the law may result when a principle is correctly identified but is applied to facts in an objectively unreasonable way. Do you understand what I'm saying about the significance of this reference in Fulminante to Russian versus Spain and the parenthetical that says denial of a defendant's right to be present at trial as part of a list of nonstructural errors? It does list the Russian case, Your Honor. But if you go back and look at Russian, first of all, Russian concerned absence from a colloquy with a juror who had raised a concern. She actually knew the victim of a witness who was testifying against one of the defendants at trial. And so it's a very different kind of presence error than the one here and arguably might even be considered to be a de minimis kind of error. So I don't think that the quick parenthetical description of Fulminante really was designed to list. I can't see it. It looks to me like this is just a straight Keiler situation, C-U-Y-L-E-R. I don't really know how to say it. That where there's no objection, an actual conflict must adversely affect representation. It's not enough that there's a potential conflict. And then you look to see whether it actually affected representation. And the state court did look to see if it actually affected representation. Said, well, the way it would affect it, if it affected it, is the prosecutor would pull her punches so as not to make the DA's office mad at her when she was in the defendant's chair for her methamphetamine case. And they said, nope, she didn't pull this punch. She didn't pull that punch. Every issue that the defendant raised, she didn't pull her punches. So there was no actual adverse effect. It seems like they did exactly what the Supreme Court wants. Well, respectfully, Your Honor, the actually adverse effect or the likely adverse effect on counsel's performance is, of course, the Sixth Amendment analysis. Here, if we were to apply a harmless error analysis, again, it would be under Brett, which would be arguably, in our view, an inappropriate higher standard. It would be inconsistent with Sixth Amendment analysis. For most Sixth Amendment violations, Strickland applies, and that is a prejudice analysis. But the Supreme Court has carved out conflict cases under Holloway and Coyler and show is a likely effect on counsel's performance. So if we were to apply harmless error analysis here on the Fifth Amendment claim, which is substantial and injurious effect on the jury's deliberation, that would be an inconsistent higher standard than the Sixth Amendment analysis. And moreover, Your Honor, there's reason to think that, in fact, just the reverse should be the case, because the two constitutional protections protect different interests. The Sixth Amendment protection ensures that the accused does not stand against a well-trained prosecutor and the resources of the State. And that's what the Supreme Court said in Feretta. And in Mickens, the Court said that the right to counsel is accorded not for its own to receive a fair trial. And so, as the Court said in Wheat, the essential aim is to guarantee an effective advocate for the defendant, whereas, in contrast, the due process analysis, the presence right under the due process analysis, serves the – that protection serves to protect not just the interests of the defendant, but also the integrity of the trial process itself. And as this Court in Badger wrote, the interest is society's interests in avoiding the loss of confidence in the courts as instruments of justice. And in Sturgis, this Court wrote that it also rests on society's interest in due process and is designed to safeguard the public's interest in a fair and orderly judicial system. So whether or not a particular case is actually affected by an error under the due process analysis, confidence in the courts is undermined by a secret trial or a secret proceeding, regardless of the impact in a particular case. And that's why exclusion from an entire trial or a critical portion of a trial rises to the level of structural error. Do we have any further questions? I may reserve several minutes. You may reserve your remaining minutes. Thank you, Your Honor. May it please the Court. Peggy Ruffray, Deputy Attorney General for Respondent. The question for this Court is whether it was contrary to or an unreasonable application of Supreme Court law for the State appellate court to find that the defendant's absence from an in-camera hearing could be reviewed for harmless error. I'll first mention briefly the certificate of appealability requirement. There has been no COA granted on this issue to date. We don't believe there is such a thing as an implied COA. It is a jurisdictional requirement. Counsel, how did this issue come to be briefed in front of the panel? I noticed there were letter briefs. Yes. The panel did request supplemental briefing at one point on the issue. So the panel asked counsel to brief this issue? Yes. Okay. I think specifically what happened was on remand from the Supreme Court after Mickens v. Taylor, the Court asked for a briefing just on that issue of the impact of And also the presence issue. At that point, we objected to that portion of their supplemental briefing on grounds that no COA had been granted. The panel then requested separate briefing on the presence error issue, but never granted the COA. So at this point, if the Court is going to have an analysis of this issue, it should say that it has granted the COA. Well, that does answer my question to you. Is it your view that we have the authority to grant a COA, should we choose to do so, even in the absence of a formal motion by a party? That is, there was briefing by a party, and then the Court took up the issue. Or anyway, do you think that we have the authority to do that? And this is kind of a long question, isn't it? If so, is there a sufficient issue here that reasonable jurists can differ and that we should go ahead and grant the COA and decide it on the merits? I think the Court probably can grant the COA at this stage. There's a new circuit rule that I think was enacted this year, and I believe it's Circuit Rule 22-1E. Perhaps I'm not positive, but I think that's what it is. And what that said was that a Petitioner's attorney can brief both certified and uncertified issues in the brief, and that the Court would treat the briefing of the uncertified issues as a request for a COA. So based on that circuit procedure, I think the Court probably could. Do you think there's a substantial enough issue as to which reasonable people can differ that we ought to grant the COA? Under the test, I don't believe that reasonable jurists could differ about this particular issue in light of the clear United States Supreme Court authority governing the issue. So we would have to say that the panel, the members of the panel, were so unreasonable and Petitioner's counsel is so unreasonable that it's not even worthy of a COA, even if we disagree with them? Correct. At this point, it would probably be helpful and instructive for the Court to issue a reasoned opinion to explain its process. First, I'll touch briefly on the panel actually found that the State court's opinion was contrary to Supreme Court law because it failed to specifically cite a Supreme Court case. In Early v. Packard, the United States Supreme Court, that the State court need not even be aware of the Supreme Court law, much less cite it. So as to that particular portion of this opinion, which was the second section of our petition for rehearing, I think Early v. Packard has totally put that issue to rest. So then the question is whether the State court's decision was an unreasonable application of Supreme Court law. There are three instructive Supreme Court cases. The first is Russian v. Spain, where this Court had held that defendant's absence from a hearing where the judge interviewed a juror who said she wasn't sure if she could be fair. She was very emotional because it turned out that she knew one of the witness's murder victims. The Court had two conferences with her without the defendant or his attorney being present, and this Court held that that was reversible per se. The U.S. Supreme Court, in a per curiam opinion, said we emphatically disagree with that and indicated that it was, in fact, subject to harm.
judges: Schroeder, Ferguson, Reinhardt, Rymer, Kleinfeld, Silverman, Graber, Wardlaw, Gould, Clifton, Bybee